IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
KELVIN TODD,                    )
                                )
    Plaintiff,                  )
                                )       CIVIL ACTION NO.
    v.                          )       3:11cv1077-MHT
                                )            (WO)
DAEWON AMERICA, INC.,           )
                                )
    Defendant.                  )
```

OPINION AND ORDER

Plaintiff Kelvin Todd brings this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, on behalf of himself and others similarly situated, alleging that his former employer, defendant Daewon America, Inc., violated the FLSA's overtime-pay provisions. Specifically, Todd alleges Daewon had a policy of paying for only 15 minutes of pre-shift work and, as a result of this policy, the company shorted his overtime pay. Todd also alleges that the company deducted 30 minutes of pay for a lunch break even though regularly requiring him to work through lunch.  Jurisdiction is proper under 28

U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (FLSA).

The case is now before the court on Todd's motion for conditional class certification. For the reasons that follow, the motion will be granted.

## I. BACKGROUND

Todd worked for Daewon from September 2, 2009, until December 3, 2011. He worked in several different departments at its manufacturing plant in Opelika, Alabama, including shot peening, assembly, and paint. His last rate of pay with the company was $ 13.40 an hour, with an overtime rate of $ 20.10 an hour.

Todd alleges that, although Daewon paid him some overtime, it did not pay him for all the overtime he worked. The FLSA requires that any employee who works over 40 hours a week receive one and a half times his regular pay for all excess hours. 29 U.S.C. § 207.[1]

---

1. Daewon does not dispute that the FLSA governs its payment of Todd and other non-exempt employees.

Todd contends that he was underpaid as a result of Daewon's rounding practices. The company's policy was to pay for pre-shift overtime work only if the employee worked an excess of 15 minutes before the start of his shift. Todd regularly began work for Daewon before the start of his shift, but was not paid for that time because it did not exceed 15 minutes; if he worked more than 15 minutes pre-shift, Daewon paid him for the 15 minutes but no more. In July 2011, the company changed its policy so that it would not pay for any pre-shift time unless the employee worked an excess of 30 minutes pre-shift. According to Todd this change resulted in further under-compensation in violation of FLSA.

Additionally, Todd was routinely required to work through his lunch break, but Daewon still deducted 30-minutes pay for his lunch. Todd states, "There were very few times during my employment with Daewon that I was able to take a full meal break ... because we were short-handed and because of my heavy workload." Todd Decl.

(Doc. No. 16-2) at ¶ 10. Todd complained of this practice to his employer, but was told the 30 minutes would be deducted even when he was required to work through lunch.

Todd filed this lawsuit on December 16, 2011. Five other current and former employees of Daewon have since consented to opt into his lawsuit. Of these five opt-in plaintiffs, three have also filed declarations detailing their complaints against the company.

Opt-in plaintiffs Aaron Ashford, Otis Bridges, and Derrick Potter all state that, like Todd, Daewon did not pay them sufficient overtime due to the company's policy of paying for pre-shift work only when it exceeded 15 minutes. Ashford and Potter also had 30 minutes deducted for lunch even though they frequently had to work during this time. Ashford, the only opt-in plaintiff currently employed at Daewon, is periodically required to attend safety meetings 30 minutes before the start of his shift, and he is not paid for this time. Ashford complained to

4

his supervisor about these pay discrepancies, and his supervisor told him that this is the "way the system works." Ashford Decl. (Doc. No. 16-3) at ¶ 12. Potter and Bridges also raised complaints with supervisors to no avail.

Ashford and Potter were each paid $ 11.80 an hour, and Bridges was paid $ 10.25 an hour. Ashford works as a material handler and forklift operator; Bridges was a production operator; and Potter worked as a paint technician and also worked in the quality department.

Todd seeks certification of a potential class of opt-in plaintiffs of all those who (like himself, Ashford, Bridges, and Potter) were "employed by Defendant and perform[ed] off the clock work without being paid at any time during the three (3) years preceding the filing of this Complaint." Compl. (Doc. No. 1) at ¶ 29.

## II. DISCUSSION

The FLSA authorizes a worker seeking unpaid compensation to bring a collective action on behalf of himself and "similarly situated" workers. 29 U.S.C. § 216(b); see also Garner v. G.D. Searle Pharms. & Co., 802 F. Supp. 418, 420 (M.D. Ala. 1991) (Thompson, C.J.). Unlike traditional class actions under Rule 23 of the Federal Rules of Civil Procedure (which bind all members of the class whether they choose to participate in the litigation or not), the FLSA § 216(b) collective action is "opt-in," that is, workers are bound by the lawsuit's result only if they affirmatively decide to participate by submitting written consents to the court.[2] Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir. 2001).

"Because similarly situated employees must affirmatively opt into the litigation, the decision to

---

2. See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974) ("[T]he judgment [in a class action], whether favorable or not, will bind all class members [who did] not request[] [to be] exclu[ded].").

certify the action, on its own, does not create a class of plaintiffs.  Rather, the 'existence of a collective action under § 216(b) ... depend[s] on the active participation of other plaintiffs.'"  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008) (alterations in original) (quoting Cameron-Grant v. Maxim Healthcare Servs. Inc., 347 F.3d 1240, 1249 (11th Cir. 2003)). Conditional certification of a putative class is important because it allows for court-authorized notice to alert potential opt-in class members of the suit's existence.  Id. (citing Hipp, 252 F.3d at 1218).  Once others opt in, the case can move forward through discovery as a collective action on behalf of the opt-in plaintiffs.  Id.

     The Eleventh Circuit Court of Appeals thus recommends a two-step process for certifying FLSA collective actions under § 216(b).  Id. at 1260.  At the first stage, courts consider conditional certification of the class of plaintiffs for notice purposes; this stage is alternately

called the "conditional certification stage" or "notice stage."  Id. at 1260 & 1261.  At this initial stage, "the district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated.'"  Dybach v. State of Fla. Dept. of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Certification at this stage is considered "conditional" because courts leave open the possibility for decertification of the class when more information about the opt-in plaintiffs is available.  Morgan, 551 F.3d at 1261.

The second stage of the recommended two-step approach is "triggered" by a motion for decertification of the class.  Id.  "At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity."  Id.

In this case, the litigation is at the conditional certification, or notice, stage.  Because discovery has

8

not yet begun and the record is still undeveloped, the standard for finding similarity is "fairly lenient," id. (quoting Anderson, 488 F.3d at 953); the standard here has also been described as "flexib[le]," id. (quoting Hipp, 252 F.3d at 1214), "not heavy," id., (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)), and "elastic and less stringent than that for joinder under [Federal Rule of Civil Procedure] 20(a) or for separate trials under [Rule] 42(b)," id. (quoting Grayson, 79 F.3d at 1096). Still, the plaintiff must provide a "reasonable basis" for the court to find other similarly situated workers exist and would opt in if they knew of the suit. Id. at 1260. This burden may be met with "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Anderson, 488 F.3d at 952 (quoting Grayson, 79 F.3d at 1097). Mere assertions from counsel that illegal activity is widespread and that other employees will join the action upon notice are, without more,

9

insufficient. Morgan, 551 F.3d at 1261 (quoting Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983)).

Todd thus bears the burden at this preliminary stage to show a reasonable basis for finding, first, that he and the potential opt-in plaintiffs are similarly situated and, second, that other Daewon employees desire to opt into his suit.

### A. Similarly Situated Requirement

Neither the FLSA nor case law provides a clear definition of "similarly situated," Morgan, 551 F.3d at 1260; instead, courts have recognized that the relevant factors for determining whether other employees are similarly situated vary depending on the type of violation alleged. See, e.g., Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 364 (M.D. Ala. 1999) (Albritton, C.J.) (discussing Dybach, 942 F.2d 1562, and noting that the "determinative factor" for evaluating whether the Dybach employees were similarly situated depended on a

10

"distinct factual scenario"). Thus in Grayson, a case involving a claim of age discrimination under the Age Discrimination in Employment Act (ADEA)[3], the Eleventh Circuit Court of Appeals required the plaintiffs to show "class-wide discrimination" in order to satisfy the similarly situated requirement. 79 F.3d at 1097. In Dybach and Morgan, on the other hand, the appellate court viewed the similarly situated inquiry as requiring similarity of "job requirements and ... pay provisions." Dybach, 942 F.2d at 1567; see also Morgan, 551 F.3d at 1262. The court required similar job requirements and pay provisions in Dybach and Morgan, because the issue in both cases was whether the employees were exempt from the FLSA as professional or managerial employees.

Unlike the plaintiffs in Grayson, Todd seeks to pursue a § 216(b) collective action to vindicate rights

---

    3. The ADEA, 29 U.S.C. § 626(b), incorporates the FLSA's opt-in collective mechanism. Grayson, 79 F.3d at 1096. In Grayson, the Eleventh Circuit thus approved the ADEA collective action pursuant to the requirements of section 216(b) of the FLSA. Id.

under FLSA; and, unlike the plaintiffs in Dybach and Morgan, FLSA's applicability is not at issue. Here, Todd is alleging that Daewon violated the FLSA as a direct result of its "uniform payroll policy/practice," which, according to Todd, affected "every single hourly paid non-exempt employee working with Defendant during the three years preceding the filing of [this] complaint," Pl. Br. (Doc. No. 15) at 11; thus, he argues that all hourly, non-exempt Daewon employees qualify as similarly situated in relation to this suit.

The court agrees that, at this stage, the proposed plaintiff-class members and Todd are sufficiently similarly situated such that conditional certification of this § 216(b)-collective action is warranted. The proposed class is reminiscent of two other classes that were certified out of this district: Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 364 (M.D. Ala. 1999) (Albritton, C.J.) and Barron v. Henry County School System, 242 F.Supp. 2d 1096, 1104 (M.D. Ala. 2003)

(Albritton, C.J.). In Harper, the court conditionally certified a class consisting of all hourly wage employees who, within the past three years, had worked in the same restaurant as the named plaintiffs. 185 F.R.D. at 365. The defendant objected that, since the restaurant workers included busboys, servers, cooks and dishwashers, their job duties and pay provisions were too different from those of the class representatives to qualify them as similarly situated. Id. The court, however, found the workers' collective status as "victims of employment practices" that violated the FLSA satisfied the similarly situated requirement. In Barron, the plaintiffs asked the court to certify conditionally a class of hourly wage earners who worked at a variety of different schools and in different positions within a school district. 242 F.Supp. 2d 1096, 1105. The court, finding some evidence that the pattern of alleged FLSA violations across the district was "systemic," id., rather than "sporadic," id. at 1104, agreed conditionally to certify this broad

class.[4]  See also Longcrier v. HL-A Co., Inc., 595 F.Supp. 2d 1218, 1241 (S.D. Ala. 2008) (Steele, J.) (conditionally certifying a class of hourly wage earners at an automobile parts manufacturing center where all were "collectively victims of a single policy or plan").[5]

In this case, Todd alleges that Daewon had a policy of not paying its hourly employees for time worked pre-shift unless the time exceeded 15 minutes.  He has submitted four declarations, from himself and three other Daewon employees, all attesting that this was in fact the company's payroll practice.  Contrast Reed v. Mobile County School System, 246 F.Supp. 2d 1227, 1236 (S.D. Ala. 2003) (Butler, C.J.) (finding insufficient evidence of a pattern or practice where plaintiffs "produced no affidavits from employees identifying any allegedly

---

    4.  The Eleventh Circuit has also held that, in a pattern or practice case, proof of "a unified policy, plan, or scheme" is not always necessary.  Grayson, 79 F.3d at 1095.

    5.  The workers in Longcrier alleged the same FLSA violations as do the plaintiffs in the instant case.  595 F.Supp. 2d at 1221.

14

unlawful practice"). The declarations show that this payroll practice occurred across several different departments within the company and over a long span of time. As further evidence of the existence of this practice, Todd submits his time sheet from Daewon; the time sheet illustrates the company's use of the rounding policy Todd describes in his complaint. He also alleges that Daewon had a policy of requiring its employees to work through their lunch break without compensation. All four declarants attest to the existence of this policy, though only three explicitly state that they were underpaid as a result of it. The court finds these declarations and Todd's time sheets provide a reasonable basis for finding that the payroll practices Todd alleges were widespread and "stem from some ... formal or informal policy or practice." Barron, 242 F.Supp. 2d at 1104.

Daewon does not contest that its payroll practices led to under-calculating employee work hours; rather, it

15

argues that inaccuracies in its payroll policies did not violate FLSA because supervisors did not order employees to begin work before their shifts. In addition, Daewon argues that its policy of compensating employees for overtime if employees submit a "working hour change notice" form protects against FLSA violations. As such, it contends that the proposed plaintiff class members "will have widely divergent claims depending on their scheduled starting work time, closing work time, job duties, department, supervisor and reasons why they did not follow the procedures by Daewon to request pay for the alleged unpaid 'pre-shift and post-shift' work." Def. Br. (Doc. No. 18) at 23. Daewon thus asks the court to find the members of the plaintiff class insufficiently similar for conditional certification and notice.

However, a motion for conditional certification is not the appropriate vehicle for a decision on the merits. <u>Longcrier</u>, 595 F.Supp. 2d at 1240-41 ("To the extent that Defendant would now argue the merits of the case, such

debates are premature and inappropriate."). The court is not yet tasked with determining whether the availability of the working-hour-change-notice form cured potential FLSA violations or whether pre-shift labor is properly compensable when done voluntarily.  While Daewon's assertions hint that individual issues may eventually dominate this collective action, it is not clear at this early stage that the individual factors go to liability, rather than damages. White v. Osmose, Inc., 204 F.Supp. 2d 1309, 1318 (M.D. Ala. 2002) (Albritton, C.J.).  As the court cannot agree with the company's assertions without rendering judgment on the merits, these contentions are better raised at a later stage.  See also Morgan, 551 F.3d at 1261 (discussing the decertification stage and explaining that as "more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated").

B.  <u>Desire of Others to Opt-In</u>

Before conditionally certifying the class for notice purposes, this court must assure itself that there are others who "desire to 'opt-in'" to Todd's action. <u>Dybach</u>, 942 F.2d at 1567.

As discussed, five former and current Daewon employees have filed consents to opt into this action. Daewon argues that the court should consider only the consents from the three employees who also submitted declarations as evidence of opt-in interest. The court cannot agree. The consents are proof that at least five former and current Daewon employees wish to join a suit against Daewon for damages for "overtime compensation under the Fair Labor Standards Act." Consents (Doc. No. 16-1). Furthermore, each of the declarants states his belief that, if more of their co-workers learned of the suit, they would join as well. The court finds this sufficient evidence that others desire to opt into the suit Todd has initiated.

18

The court will therefore conditionally certify a class of all non-FLSA-exempt, hourly wage employees who worked for Daewon within the three years preceding the filing of the complaint in this case.[6]

\*\*\*

Accordingly, it is ORDERED as follows:

(1) Plaintiff Kelvin Todd's motion for conditional class certification and to provide notice (Doc. No. 14) is granted.

(2) The court conditionally certifies a class consisting of those nonexempt, hourly wage employees who

---

   6. The three-year statute of limitations applies to actions brought under the FLSA for willful violations of the statute. 29 U.S.C. § 255(a). Otherwise, suits for FLSA violations must be brought within two years. Id. To qualify as a willful violation, the employer must have known its conduct was prohibited by the FLSA or else shown reckless disregard for the possibility that the conduct violated the FLSA. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134 (1988). Daewon does not argue that a two-year statute of limitations should apply to the conditionally certified class. Furthermore, Todd and his co-workers state that they notified their supervisors of pay discrepancies and yet the contested practices continued. At this preliminary stage, the court will thus allow notice to proceed on behalf of the three-year class.

worked at defendant Daewon America, Inc.'s manufacturing plant in Opelika, Alabama for the three years preceding initiation of this suit.

    (3) The parties are to submit, within 14 days from the date of this order, a <u>joint</u> proposal to the court for providing the requested notice of this collective action to similarly situated persons.  If the parties cannot agree on the notice procedure, the joint proposal should include each side's suggested procedure, with an explanation from each side as to why its suggested procedure is better than the other procedure.

    (4) If the parties cannot agree on the notice procedure, the parties are to request in writing, within 21 days from the date of this order, that the magistrate judge resolve their differences.

    DONE, this the 13th day of February, 2013.

                              <u>  /s/ Myron H. Thompson  </u>
                                UNITED STATES DISTRICT JUDGE