IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| KELVIN TODD, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 3:11cv1077-MHT |
| ) | (WO) |
| DAEWON AMERICA, INC., ) | |
| ) | |
|     Defendant. ) | |

OPINION AND ORDER

Plaintiff Kelvin Todd brings this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, on behalf of himself and others similarly situated, claiming that his former employer, defendant Daewon America, Inc., violated the FLSA's overtime-pay provisions. Jurisdiction is proper pursuant to 29 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (federal question).

Daewon America has filed a motion to seal the parties' joint proposed settlement agreement. For the reasons that follow, the company's motion will be denied.

I.

Todd worked for Daewon America in several different departments at its manufacturing plant in Opelika, Alabama, including shot peening, assembly, and paint. His last rate of pay with the company was $ 13.40 an hour, with an overtime rate of $ 20.10 an hour.

Todd alleges that, although the company paid him some overtime, it did not pay him for all the overtime he worked. The FLSA requires that any employee who works over 40 hours a week receive one-and-a-half times his regular pay for all excess hours.  29 U.S.C. § 207.

Todd contends that he was underpaid as a result of Daewon America's rounding practices.  The company's policy was to pay for pre-shift overtime work only if the employee worked an excess of 15 minutes before the start of his shift.  Todd regularly began work for the company before the start of his shift, but was not paid for that time because it did not exceed 15 minutes; if he worked more than 15 minutes pre-shift, the company paid him for

2

the 15 minutes but no more.  Later, the company changed its policy so that it would not pay for any pre-shift time unless the employee worked an excess of 30 minutes pre-shift.  According to Todd, this change resulted in further under-compensation in violation of FLSA. Additionally, Todd says he was routinely required to work through his lunch break, but Daewon still deducted 30 minutes pay for his lunch.

Todd filed this lawsuit alleging that, in violation of the FLSA, Daewon America had a policy of paying for only 15 minutes of pre-shift work and that as a result of this policy the company shorted his overtime pay.  He also alleges that the company, in violation of the FLSA, deducted 30 minutes of pay for a lunch break despite regularly requiring him to work through lunch.  He subsequently moved for conditional class certification so as to notify potential class members of their right to opt into his lawsuit under the FLSA's collective-action provision, 29 U.S.C. § 216(b). The court conditionally

certified a class "consisting of those nonexempt, hourly wage employees who worked at defendant Daewon America, Inc.'s manufacturing plant in Opelika, Alabama for the three years preceding initiation of this suit to the present."  Todd v. Daewon Am., Inc., 2013 WL 557859 *6 (M.D. Ala. 2013), as amended by Todd v. Daewon Am., Inc., 2013 WL 1163431 *2 (M.D. Ala. 2013).  The court further approved a notice procedure to persons who were alleged members of the class.  Todd v. Daewon Am., Inc., 2013 WL 1163431 (M.D. Ala. 2013), as amended by order of April 3, 2013 (Doc. No. 36).  Forty or so persons opted into this case.

Todd and the remaining opt-in plaintiffs in the case have negotiated a settlement agreement with Daewon America regarding their FLSA claims.  One provision in the agreement provides that its terms are to remain confidential.  Based on this provision, Daewon America now requests that the settlement agreement be filed under seal.  Todd opposes the motion to seal the agreement.

4

II.

When an employee brings a private action under the FLSA and presents a proposed settlement agreement to the district court, "the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Lynn's FoodStores, Inc. v. United States Dept. Of Labor, 679 F.2d 1350, 1353 (11th Cir. 1982).  The court must determine whether the parties have reached an agreement based on a negotiated, good-faith compromise of a bona-fide dispute over application of relevant provisions of the FLSA and of wages owed under the FLSA based on the assertion that Todd was not properly compensated for his work and overtime.

Pursuant to its settlement with Todd, Daewon America has moved to seal that settlement and thus keep it confidential.  The court cannot agree to this aspect of the settlement for two reasons.

First, there is the general, albeit qualified, right of the public to access to court records.  One legal

writer put it this way: "Essential to the rule of law is the public performance of the judicial function.  The public resolution of court cases and controversies affords accountability, fosters public confidence, and provides notice of the legal consequences of behaviors and choices. ...  This right is rooted in the common law.  The First Amendment also confers on the public a qualified right of access."  Robert Timothy Reagan, Sealing Court Records and Proceedings: A Pocket Guide (Federal Judicial Center) (2010) at 1 (footnotes omitted); see also Nixon v. Warner Communications, Inc., 435 U.S. 589, 596 (stressing the importance of the common-law privilege of the public to inspect judicial records); Romero v. Drummond Co., Inc., 480 F.3d 1234, 1245-1246 (11th Cir. 2007) (discussing the common law and presumptive right of public access to court records, including in the context of settlement agreements).

This qualified right of public access also attaches when the parties file their agreement. See also Brown v.

Advantage Engineering, Inc., 960 F.2d 1013, 1015-1016 (11th Cir. 1992); Bank of Am. v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343-45 (3d Cir. 1986); S.E.C. v. Van Waeyenberghe, 990 F.2d 845, 849 (5th Cir. 1993). The above already-quoted legal writer explained why as follows: "Parties may wish to settle their cases according to confidential terms, and often there is no need to file settlement agreements. [See generally Robert Timothy Reagan, Sealed Settlement Agreements in Federal District Court (Federal Judicial Center 2004).] Often, however, the agreement requires court approval or the parties wish to retain the court's jurisdiction over enforcement. In those situations, the agreement may be filed, and then a qualified right of public access attaches. [Bank of Am. v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343–45 (3d Cir. 1986); SEC v. Van Waeyenberghe, 990 F.2d 845, 849 (5th Cir. 1993).] As one court observed, 'The public has an interest in knowing what terms of settlement a federal judge would approve and

7

perhaps therefore nudge the parties to agree to.' [Jessup v. Luther, 277 F.3d 926, 929 (7th Cir. 2002)]." Sealing Court Records and Proceedings: A Pocket Guide, supra, at 16 (bracketed citations in original quotation as footnotes).

Nevertheless, as stated, this right is qualified. In other words, there are exceptions. "On occasion ... there are good reasons for courts to keep parts of some proceedings confidential. Courts will keep confidential classified information, ongoing investigations, trade secrets, and the identities of minors, for example." Sealing Court Records and Proceedings: A Pocket Guide, supra, at 1.

Here, Daewon America asks that this court seal its agreement with Todd. However, other than referring to the agreement, the company offers nothing in support of its request. The mere fact that both parties have agreed to confidentiality of an agreement is insufficient to override the right of the public to have access to that

agreement. For, this right belongs to the public and not just to the parties, and, as a result, it cannot be impinged or waived merely by agreement of the parties. Cf. Zedner v. United States, 547 U.S. 489, 500-01 (2006) ("The purposes of the [Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174,] also cut against exclusion on the grounds of mere consent or waiver. If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind. See, e.g., § 3161(h)(8)(A) (to exclude delay resulting from a continuance-even one 'granted ... at the request of the defendant--the district court must find 'that the ends of justice served ... outweigh the best interest of the public and the defendant in a speedy trial' (emphasis added)). That public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely.").

Indeed, the Eleventh Circuit Court of Appeals has explained that: "It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances set forth by the district court in the record ..., the court file must remain accessible to the public." Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992). And this court has further explained that: "The strength of the presumption of openness falls along a continuum, with the presumption being stronger for documents that 'directly affect an adjudication' than for documents, such as certain discovery materials, that 'come within a court's purview solely to insure their irrelevance.'" Stalnaker v. Novar Corp., 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (Thompson, J.) (quoting

United States v. Amodeo, 71 F.3d 1044, 1049 (2nd Cir.1995)).

Therefore, the parties must have some reason, other than their own mere desire, to override the public's interest in open judicial records, and, according to the Eleventh Circuit, that reason must be based on "extraordinary circumstances." Brown, 960 F.2d at 1016. Here, Daewon America has not proffered such a reason.

Second, in its capacity of reviewing the proposed settlement under the FLSA for fairness, the court is convinced that the confidentiality agreement not only offers no benefit to Todd and the opt-in plaintiffs, it unfairly subjects them to a specter of contempt, both civil and criminal. See Hogan v. Allstate Beverage Co., Inc., 821 F. Supp. 2d 1274, 1283-84 (M.D. Ala. 2011) (Thompson, J.) (finding that confidentiality provisions unequally benefit the employer and frustrate FLSA goals); Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010 (Merryday, J.); see also Elizabeth Wilkins,

11

<u>Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act</u>, 34 Berkeley J. Emp. & Lab. L. 109, 113 (2013) ("Congress's intent to protect both the public's interest in a well-functioning economy and the vulnerable worker subject to unequal bargaining dynamics militates against secret settlements."). Daewon America has not presented any explanation or justification for imposing such an unfair confidentiality requirement on Todd and the opt-in plaintiffs. The company's mere desire for secrecy is insufficient to outweigh this unfairness to them.

***

Accordingly, it is ORDERED that defendant Daewon America, Inc.'s motion to file the parties' joint settlement agreement under seal (Doc. No. 123) is denied. The proposed settlement is to be filed unsealed.

DONE, this the 11th day of June, 2014.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE